UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH MARTIN OLMOS,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-cv-01478-CKD<br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and remand for further proceedings, and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1973, applied on August 1, 2023 for DIB, alleging disability beginning January 1, 2022. Administrative Transcript ("AT") 17, 57. Plaintiff alleged he was unable to work due to PTSD, left arm and hand nerve damage, left shoulder injury and arthritis, and the need for corrective knee surgery. AT 58. In a decision dated January 27, 2025, the ALJ

determined that plaintiff was not disabled.[1] AT 17-29. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.
>
> 2. The claimant engaged in substantial gainful activity from February 2023 to September 2023.
>
> 3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.
>
> 4. The claimant has the following severe impairments: bilateral knee disorder status post left knee surgery; left shoulder disorder status post surgery; left ulnar nerve injury; post-traumatic stress disorder

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert , 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

> (PTSD); anxiety; depression; and hearing loss.
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, but he can never climb ladders, ropes, or scaffolds. He is limited to only occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling. He is limited to no more than frequent handling, fingering, and feeling with the left upper extremity. He is limited to only occasional overhead reaching with the left upper extremity. He is limited to only occasional interaction with supervisors, coworkers, and the public. He cannot perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas. He can deal with only occasional changes in a routine work setting. In addition, he can work in an environment with no more than moderate noise level.
>
> 7. The claimant is capable of performing past relevant work as a cashier and as a Manufacturing Engineer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 8. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2022 through the date of this decision.

AT 19-29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to provide adequate reasons for discounting plaintiff's allegations of mental dysfunction; (2) the ALJ erred in evaluating the medical source opinions of the State agency psychological consultants; (3) the ALJ's determined residual functional capacity (RFC) did not incorporate all plaintiff's mental limitations; (4) the ALJ's step four finding was not supported by substantial evidence; and (5) the ALJ failed to provide adequate reasons for discounting plaintiff's allegations of pain and physical dysfunction.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Residual Functional Capacity

Plaintiff argues that the RFC failed to incorporate all his mental limitations, specifically his moderate limitations in concentration, persistence, and maintaining pace (CPP). The ALJ assessed these limitations at steps two and three, writing:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. He allegedly has difficulties with concentration and persistence. However, the treatment notes generally reflect that he generally demonstrated linear or goal-directed thought process, adequate attention, and intact concentration. He was able to perform some skilled work in 2023, which indicates considerable ability to maintain concentration, persistence, and pace. . . . [H]e can do most household chores and prepare simple meals, has the ability to drive and ride a bicycle, and is able to pay bills, count change, read, use email and texting, and shop by computer. . . . [H]e is able to play golf. In addition, the

> undersigned noticed that the claimant was able to follow closely and participate fully during the audio hearing. For these reasons, the claimant has more than mild but less than marked limitations in this domain.

AT 22-23 (record citations omitted).

The ALJ translated plaintiff's moderate mental limitations—including those in CPP—into a mental RFC for occasional interactions with others, no work requiring a specific production rate, and only occasional changes in a routine work setting. AT 24. These limitations were included in the ALJ's hypothetical question to the vocational expert (VE). AT 53-54.

Notably, the ALJ did not rely on medical opinion evidence to translate plaintiff's moderate mental limitations into the hypothetical posed to the VE. As discussed in a separate claim, there were two opinions in the record regarding plaintiff's mental limitations. Both State agency psychiatric consultants found that plaintiff was restricted to "simple and detailed tasks, occasional and non-collaborative co-worker contacts, limited and incidental public interactions, and a routine and predictable work environment." AT 28. The ALJ found these opinions unpersuasive and determined that plaintiff was more mentally capable than both doctors opined. AT 28.

Ultimately, the ALJ found plaintiff not disabled because he could return to his past work as a manufacturing engineer, a job with a Specific Vocational Level (SVP) of 8 on a scale of 9. AT 28, 51. A job with a SVP of 8 is one that can be learned within 4 to 10 years. AT 28. The VE described it as "very skilled." AT 51. In hearing testimony, plaintiff confirmed that, in that role, he was "a lead engineer on projects involving building locomotives and light rail trains, . . . determining work schedules, ordering supplies, and processing chain orders[.]" AT 40. The ALJ did not make alternative findings about other jobs plaintiff could perform.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant

evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Plaintiff argues that his moderate limitations in CPP "clearly precluded him from performing his past work as an engineer—an occupation that involved significant concentration, persistence, and pace." (ECF No. 9 at 24.) See Hutton v. Astrue, 491 Fed. Appx. 850, 851 (9th Cir. 2012) ("while the ALJ was free to reject [claimant's] testimony as not credible, there was no reason for the ALJ to disregard his own finding" of mild limitations in concentration, persistence, or pace).

As the Ninth Circuit held in Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), an ALJ can rely on medical testimony to translate a claimant's moderate limitation in concentration, persistence, or pace into a concrete restriction. Similarly, in Israel v. Astrue, 494 Fed. Appx. 794, 796 (9th Cir. 2012), the Ninth Circuit held that, where the ALJ "drew on restrictions identified in the medical testimony . . . when making the RFC," the ALJ adequately accounted for "his own step-3 finding [of] moderate difficulties in concentration, persistence, or pace." Here, in contrast, the ALJ did not rely on medical testimony when he translated his own finding of moderate difficulties in concentration, persistence, or pace into concrete restrictions in the RFC, e.g., no work requiring a specific production rate. As the instant case does not fall under the Stubbs-Danielson umbrella, the question is whether the mental RFC is still supported by substantial evidence, especially where plaintiff was found capable of "very skilled" work despite assessed moderate limitations in concentration, persistence, or pace.

Under Ninth Circuit caselaw, "an ALJ does not err by limiting a claimant to work that the medical evidence suggests he can perform, so long as that evidence expressly accounts for the claimant's CPP limitations (or other limitations)." Bryce M. v. Colvin, 2025 WL 1277843, *1 (C.D. Cal. Feb. 28, 2025) (citing Brink v. Comm'r, 343 Fed. Appx. 211 (9th Cir. 2009) and Lubin v. Comm'r, 507 Fed. App'x 709 (9th Cir. 2013)). In Lubin, the Ninth Circuit reasoned:

> Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert. The ALJ must include all restrictions in the residual functional capacity determination and the hypothetical question posed to the vocational expert, including moderate limitations in concentration, persistence, or pace.
>
> Limiting Lubin "to one to three step tasks due to pain and prescription drug/marijuana use" did not capture the limitation in concentration, persistence, or pace found by the ALJ. The work described by the vocational expert may still require the speed and concentration Lubin lacks. See Brink[, 343 F3d. Appx. 212]. The hypothetical question should have included Lubin's moderate limitations in concentration, persistence, or pace.

507 Fed. App'x at 712 (emphasis added). Here, the ALJ's hypothetical question to the VE included a limitation barring plaintiff from "work requiring a specific production rate, such as assembly line work or work that requires hourly quotas." AT 53. This condition relates to pace but arguably does not account for moderate limitations in concentration. Courts in this district typically find that moderate limitations in CPP correspond to a limitation to simple repetitive tasks. Kuhn v. Comm'r, 2023 WL 3994989, *9 (E.D. Cal. June 14, 2023) (collecting cases); see Didinger v. Comm'r, 2019 WL 112986, *7 (E.D. Cal. Jan. 4, 2019) (because skilled work involves "an increasing requirement for understanding and memory and concentration and persistence," a moderate limitation in CPP would "potentially preclude[] . . . past, highly skilled work.").

Defendant cites Kimberly A. v. Kijakazi, 2022 WL 19203, *6 (D. Or. Jan. 3, 2022), which states that "the ALJ's finding that Plaintiff is moderately limited in concentration, persistence, and pace . . . did not require the ALJ to assess a specific degree of functional limitation of functional limitation in the RFC." (Citations omitted.) The question is "whether the ALJ has provided an adequate explanation for the mental limitations contained in the RFC." Id. Here, the ALJ noted that plaintiff "was able to perform some skilled work in 2023, which indicates considerable ability to maintain concentration, persistence, and pace." AT 22-23. Plaintiff testified that he worked as a domestic violence advocate in 2023, "doing outreach, advocating for people, setting up booths" and the like. AT 41. He held that job for the Apache Tribe in New

Mexico for "roughly six months." AT 50. The VE testified that it was a SVP 7 job, but that plaintiff did not do it long enough to reach the SVP 7 level. AT 51. Plaintiff indicated that he worked under several "special conditions," including extra help or supervision, working irregular or fewer hours than other workers, taking breaks and walks for mental health, "hand picked tasks suited for my experience," and omitting many client-facing activities. AT 309. Plaintiff stated that he stopped working due to physical and/or mental conditions, citing the stress of the job, though the lack of VA care in the area was also a reason for leaving. AT 310, 440.

Overall, having considered all the activities cited by the ALJ regarding CPP—doing chores, preparing meals, riding a bike, and participating in the hearing, among others—the court agrees with plaintiff's assessment that the ALJ did not "explain[] how Plaintiff's activities demonstrated a mental capacity that would permit him to return to his past work as an engineer." (ECF No. 12 at 3.) The mental RFC does not correspond to moderate limitations in CPP without either support from a medical opinion or clear evidence that plaintiff was capable of performing highly skilled work. As the ALJ's hypothetical to the ALJ did not include all of plaintiff's mental limitations, plaintiff is entitled to summary judgment on this claim.[2]

REMEDY

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when

[2] The court does not reach the remaining claims.

the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 9) is GRANTED;
2. Defendant's cross-motion for summary judgment (ECF No. 11) is DENIED;
3. The Clerk of Court shall enter judgment for plaintiff; and
4. This matter is remanded for further proceedings in accordance with this order.

Dated: September 14, 2026

Carolyn K. Delaney

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/olmo1478.dib.ckd